# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### Columbus DIVISION

| | |
|---|---|
| Fatuma Ali<br>c/o Hux Law Firm, LLC<br>3 Severance Circle #18147<br>Cleveland Heights, OH 44118<br><br>**Plaintiff,**<br><br>v.<br><br>Nationwide Children's Hospital<br>c/o Rhonda L. Comer<br>700 Children's Drive<br>7th FL-OCC<br>Columbus, OH 43205<br><br>**Defendant.** | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Fatuma Ali, by and through undersigned counsel, as his/her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Plaintiff Ali is a resident of the City of Columbus in Franklin County, Ohio.

2. Defendant Nationwide Children's Hospital ("NCH") domestic corporation with principal place of business at 700 Children's Drive, Columbus, Ohio 43205.

## JURISDICTION AND VENUE

3. Personal jurisdiction is proper over Defendants pursuant to 28 U.S.C § 1331 in that Ali is alleging a federal law claim arising under the Title VII of the Civil Rights Act of 1964 ("Title VII").

4. Venue is properly placed in the United States District Court for the Southern District of Ohio, Columbus Division, because it is the district court for the district, division, and county within which the Defendant operates and conducts business.

5. Prior to instituting this action, Ali filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 22A-2023-00916, alleging that Defendant and its agents had harassed and subjected her to discrimination because of her religion and retaliated against her after she reported discrimination.

6. Ali was mailed her Right to Sue Notice from the EEOC on or about September 21, 2023.

7. A true and accurate copy of Ali's Right to Sue Notice is attached as Exhibit 1.

8. Ali has properly exhausted her administrative remedies pursuant to 29 U.S.C. § 626(e).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims in this Complaint because they arise out of the same case or controversy.

## FACTS

11. Ali is a former employee of NCH.

12. On or about February 21, 2022, NCH hired Ali as a staff nurse in its H10B Neuroscience Unit ("H10").

13. As a staff nurse in H10, Ali's duties included but were not limited to administering medications and conducting patient assessments of vital signs and neuro checks.

14. Soon after starting, Ali was subjected to discriminatory disparate treatment based on her religion, Muslim, and need to pray throughout the day.

15. Ali was not provided the same level of training that another, non-Muslim co-worker received.

16. One specific incident of not receiving the same training was when Ali did not receive resource training with a resource nurse.

17. Resource training is essential to helping nurses carry out their duties because it is where nurses are shown where to take patients when they undergo different procedures and manage medical equipment.

18. Not providing a nurse with resource training would dramatically slow down the pace at which a nurse is able to leave orientation.

19. Without resource training, nurses would have to learn on their individual shifts when and where to go for certain patient procedures.

20. Despite this disadvantage, Ali timely completed orientation.

21. Ali was also disciplined more harshly than her non-Muslim co-workers for similar mistakes.

22. In or around late July 2022, Ali made a mistake where a feeding tube for a patient ran for a little longer than expected.

23. This was not a life-threatening mistake, or even a mistake that would cause serious harm to the patient due to their care needs at the time.

24. Despite this, Ali's manager, Kathy Moellman, threatened to terminate Ali's employment if it happened again.

25. On or about August 26, 2022, Moellman called Ali into the office to discuss her performance.

26. Initially, Moellman told Ali that a family of a patient that Ali provided care for believed that Ali was not providing adequate care.

27. Once Ali refuted those claims, Moellman stated that the family was uncomfortable with Ali because was soft spoken and wore a hijab.

28. Ali was shocked and upset by Moellman's comments and told Moellman that they were inappropriate.

29. Ali also told Moellman that she was going to report the comments to HR.

30. On or about August 29, 2022, Ali reported Moellman's comments to Tandy Hamm, an HR representative at NCH, via email.

31. A true and accurate copy of Ali's email report is attached as Exhibit 2.

32. Soon after this email, Hamm and Ali met in person for a meeting.

33. In the meeting, Hamm apologized for what happened and told Ali that the comments were "unacceptable".

34. Hamm also told Ali that she was going to talk to Michelle McKissen, Moellman's supervisor, about the comments.

35. Hamm did not provide Ali with any update about the investigation until Ali reached out to see what the result was.

36. Hamm only told Ali that the situation was handled.

37. On or about September 9, 2022, Moellman, who Ali had just complained about, placed Ali on a work improvement plan ("WIP").

38. The WIP was scheduled to last until December 10, 2022.

39. The WIP contained mostly false allegations or allegations that had no way to prove or disprove.

40. Ali provided a rebuttal to the WIP due to the number of false allegations in it.

41. On or about September 21 and September 26, 2022, Ali reported two incidents of patient health concerns.

42. The September 21 incident involved her preceptor and resulted in a patient having a seizure.

43. The September 26 incident was a failure to stop a patient's feed line prior to a major, emergency surgery.

44. This is similar to what Ali was chastised for previously, but because the patient was scheduled to have surgery, this was a potentially life-threatening error that could result in a patient asphyxiating and dying during surgery.

45. Ali reported both of these incidents to Moellman.

46. Instead of ensuring she was going to investigate the reports, Moellman told Ali that she needed to "focus on yourself".

47. Ali made additional reports in Ethicspoint, which is NCH's incident management system.

48. Upon information and belief, no disciplinary action arose out of Ali's reports of the September 21 and September 26 incidents.

49. On or about October 21, 2022, Ali was suspended from work without pay for allegedly not meeting expectations during the WIP.

50. Ironically that same day, Ali received positive feedback from a different preceptor when she was not able to work with her normal preceptor.

51. On or about November 28, 2022, NCH terminated Ali's employment.

52. NCH terminated Ali's performance before she had the chance to work out the scheduled end of the WIP on December 10, 2022.

## COUNT I:

## RETALIATION IN VIOLATION OF TITLE VII

53. Ali restates each and every prior paragraph of this complaint, as if it were fully restated herein.

54. As a result of the Defendant's discriminatory conduct described above, Ali complained about the religious discrimination she was experiencing.

55. Specifically, Ali complained by telling her supervisor, Moellman, directly the discriminatory comments were inappropriate and reporting the comments to HR.

56. In response to Ali's complaint of discrimination, Defendant retaliated against her by placing her on a WIP and terminating her employment.

57. Defendant's actions were retaliatory in nature based on Ali's opposition to the unlawful discriminatory conduct.

58. Thus, Defendant's actions violated 42 U.S.C § 2000e-3(a)

59. As a direct and proximate cause of Defendant's retaliatory discrimination against and termination of Ali, she suffered and will continue to suffer damages.

## COUNT II:

## RETALIATION IN VIOLATION OF R.C. §4112.02(I)

60. Ali restates each and every prior paragraph of this complaint, as if it were fully restated herein.

61. As a result of the Defendant's discriminatory conduct described above, Ali complained about the religious discrimination she was experiencing.

62. Specifically, Ali complained by telling her supervisor, Moellman, directly the discriminatory comments were inappropriate and reporting the comments to HR.

63. In response to Ali's complaint of discrimination, Defendant retaliated against her by placing her on a WIP and terminating her employment.

64. Defendant's actions were retaliatory in nature based on Ali's opposition to the unlawful discriminatory conduct.

65. Defendant's actions violated R.C. §4112.02(I), which prohibits employers from retaliating against employees who oppose unlawful discriminatory conduct.

66. As a direct and proximate cause of Defendant's retaliatory discrimination against and termination of Ali, she suffered and will continue to suffer damages.

## COUNT III:

## RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII

67. Ali restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Ali was an "employee" as defined by Title VII.

69. Defendant was an "employer" as defined by Title VII.

70. Throughout her employment, Ali was fully competent to perform her essential job duties.

71. Defendant treated Ali differently from similarly-situated employees based on her religion.

72. Specifically, Defendant discriminated against Ali on the basis of her religion when it failed to provide her the same training as her non-Mulsim co-workers and subjected her to harsher discipline than her non-Muslim co-workers.

73. Defendant violated Title VII when it discriminated against Ali on the basis of her religion.

74. As a direct and proximate cause of Defendant's wrongful conduct, Ali has suffered and will continue to suffer damages.

## COUNT IV:

## RELIGIOUS DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(A)

75. Ali restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

76. Defendant was an employer as defined by R.C. § 4112.01(A)(2).

77. Ali was an employee as defined by R.C. §4112.01(A)(3).

78. Throughout her employment, Ali was fully competent to perform her essential job duties.

79. Defendant treated Ali differently from similarly-situated employees based on her religion.

80. Specifically, Defendant discriminated against Ali on the basis of her religion when it failed to provide her the same training as her non-Mulsim co-workers and subjected her to harsher discipline than her non-Muslim co-workers.

81. Defendant violated R.C. §4112.02 when it discriminated against Ali on the basis of her religion.

82. As a direct and proximate cause of Defendant's wrongful conduct, Ali has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Ali demands from Defendant the following:

(a) Issue a permanent injunction:

(i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Ali to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Ali for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $75,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $75,000;

(e) An award of reasonable attorney's fees and non-taxable costs for Ali claims as allowable under law;

(f) An award of the taxable costs of this action; and

9

(g) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        _____
        James J. Hux (0092992)
        **HUX LAW FIRM, LLC**
        3 Severance Circle #18147
        Cleveland Heights, Ohio 44118
        Phone: (937) 315-1106
        Fax:    (216) 359-7760
        Email: jhux@huxlawfirm.com

        *Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Fatuma Ali demands a trial by jury by the maximum number of jurors permitted.

_____
James J. Hux (0092992)